IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY L. MCCLATCHER, | ) | CASE NO. 1:07CV0408 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HEMANN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the magistrate judge on consent.  The issue before the court is whether the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's application for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), is supported by substantial evidence and, therefore, conclusive.  For the reasons set forth below the court reverses the decision of the Commissioner and remands the case to the ALJ for further proceedings consistent with this opinion.

I.

Plaintiff, Mary L. McClatcher ("McClatcher"), filed an application for DIB on November 5, 2001, alleging disability as of November 7, 2000 due to a shoulder injury, asthma, hypertension, and depression.  The agency denied her application initially, determining that she could not perform her past relevant work but could perform other jobs

in the national economy. This determination was upheld on review. McClatcher petitioned for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held the hearing via teleconference on March 18, 2005. An attorney represented McClatcher at the hearing, and she testified in her own behalf. Three medical experts and a vocational expert also testified.

On December 8, 2005, the ALJ made the following relevant findings regarding McClatcher's application:

1.    The claimant met the disability insured status requirements of the Act through March 31, 2003.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3.    The medical evidence establishes that the claimant has "severe" impairments consisting of a contusion of the right shoulder. The claimant also has "non-severe" impairments consisting of asthma, hypertension and depression.

4.    The claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

5.    The claimant retains the residual functional capacity to perform light exertional work with no overhead work.

6.    The claimant's allegations of pain, other symptoms, and functional limitations are not entirely credible.

7.    The claimant's past relevant work as a clerk and receptionist do not require the performance of work-related functions precluded by the above limitations.

8.    The claimant's impairments do no prevent her from performing her past relevant work.

9.    The claimant has not been disabled, within the meaning of the Social Security Act, at any time relevant to this decision.

McClatcher appealed the ALJ's decision to the Appeals Council. The ALJ's decision

2

became the opinion of the Commissioner on December 15, 2006 when the Appeals Council declined to review the ALJ's ruling. McClatcher filed this action in the District Court on February 13, 2007 seeking to reverse the decision of the Commissioner.

On May 1, 2007 the Commissioner filed a transcript of proceedings related to McClatcher's application to the Social Security Administration ("Tr."; Docket # 12). In her merit brief McClatcher pointed out that the transcript was missing many documents related to her allegations of disability. On August 27, 2007 the Commissioner moved to suspend briefing to allow the filing of a supplemental transcript. The court granted the Commissioner's motion. The Commissioner filed a supplemental record on September 19, 2007 in which were included exhibits A through F from the administrative record ("Sup. tr."; Docket # 28). On November 6, 2007 McClatcher filed a supplemental merit brief in which she asserted, *inter alia*, that relevant documents were still missing from the administrative record. On November 27, 2007 the Commissioner filed an additional supplement containing exhibits H through L from the administrative record. The Commissioner also noted that these exhibits had been submitted to the Appeals Council after issuing its decision and, for that reason, had not been included in the administrative record or in the initial supplement filed with the court. The Commissioner also moved to strike additional documents submitted by McClatcher on the ground that they had not been submitted timely to the Commissioner and because McClatcher had failed to establish good cause for the failure to submit the documents timely. McClatcher responded that the documents should be admitted as evidence that the ALJ had failed properly to develop the record. The court permitted the admission of the additional evidence for that purpose only.

3

II.

McClatcher was born May 16, 1952. She has a high school education and about a year of college, with relevant work experience as a clerk and a receptionist. She has a history of breathing difficulties, including sinusitis, allergic rhinitis, and nasal obstruction before the alleged onset of disability. Transcript ("Tr."), pp. 263-72. Medications for these conditions included, at one time or another, Zithromax, Advair, Singulair, Claritin, Nasonex, Norvase, Allegra D, Flonase, Flovent, Ventolin, Albuterol, and Proventil. Tr. at 148, 152, 263, 265-66, 367-78, 383. Her breathing difficulties continued through the period relevant to her application for DIB. *See, e.g.,* tr. at 367-78, 383; sup tr. at 529-30, 535.

McClatcher also has a history of depression. On October 24, 1997 psychologist Patricia S. Semmelman, Ph.D. examined McClatcher at the request of the Bureau of Disability Determination ("Bureau"). Tr. at 249-60. Dr. Semmelman opined that McClatcher suffered from depression, resulting in slight restriction in her activities of daily living; moderate difficulties in maintaining social functioning; and often experiencing difficulties in concentration, persistence, and pace resulting in failure to complete tasks in a timely manner. Dr. Semmelman also found that McClatcher was moderately limited in her ability to maintain attention and concentration for extended periods and unable to complete a normal workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. McClatcher retained the capacity to handle simple, repetitive tasks.

In October 2000 McClatcher's right shoulder was injured when a fellow employee opened a door, catching her foot and knocking her to the floor. She immediately felt pain in her right shoulder, right arm, neck, and back as a result. Days afterward McClatcher

4

complained of pain and tingling in her right shoulder, arm, and hand, especially when raising her arm above her head. An x-ray examination on November 2, 2000 revealed some soft tissue calcification just above the bicipital groove of the humerus consistent with some calcific tendinitis. Tr. at 305. The results were otherwise normal. On November 7, 2000 McClatcher quit her job as a medical receptionist because she asserted that pain in her right upper extremity prevented her from performing the duties the job required.

On November 16, 2000 Harry C. Walker, D.C., D.M. examined McClatcher. Sup. tr. 532-34. He concluded that she suffered from cervical sprain/strain, right shoulder sprain/strain, cervical extension neuritis, and thoracic sprain/strain and that these injuries were directly related to her fall at work. He recommended x-rays, physical therapy, ultrasound therapy, sine wave therapy, and cold pack therapy. The x-ray studies revealed, *inter alia*, calcified bursitis of the right shoulder joint. There was no apparent fracture, dislocation, or significant joint space narrowing.

In December 2000 McClatcher began physical therapy at Layton Physical Therapy Co., Inc. By January 26, 2001 McClatcher's therapist found that McClatcher had a full range of movement in all planes with only slight discomfort and noted that the TENS unit seemed to be helping. Tr. at 274. McClatcher cancelled her next two appointments and told the therapist that she was feeling much better.

A.K. Bhaiji, M.D., examined McClatcher at the request of the Bureau on February 22, 2002. Tr. at 284-90. McClatcher complained of shortness of breath from time to time and reported that she could walk only one block before becoming short of breath. She also reported pain in her right shoulder and arm from time to time, especially when lifting her arm above her head or using it repeatedly. Dr. Bhaiji noted difficulty in grasping and

5

reported pain with movement of the right shoulder.  He observed, however, no focal deficits; normal range of motion in shoulders, elbows, and wrists; and no swelling.  He also observed that the range of motion and pulses in her lower extremities were normal, as was her gait.  Dr. Bhaiji diagnosed McClatcher as suffering from asthma, chronic obstructive pulmonary disorder, status post right upper extremity injury, and hypertension.  He opined that she would have no difficulty with work-related physical activities except with lifting, carrying, or handling objects and possibly with traveling.

An x-ray examination of McClatcher's right shoulder on February 22, 2002 found calcification near the greater tuberosity at the insertion of the supraspinatus tendon, possibly indicating tendon injury or calcific tendinitis.  Tr. at 282.  There were also mild degenerative changes in the acromioclavicular joint.  X-rays of McClatcher's right hand on the same date revealed no abnormalities.  Tr. at 283.

On July 24, 2002 McClatcher completed a Function Report and a Symptoms Report with the help of her sister.  Tr. at 323-224.  McClatcher complained of aches and pain, stiffness, and numbness in her neck and upper right extremity, fatigue, shortness of breath, depression, blurred vision, and burning in her eyes.  She rated her symptoms as being between eight and ten in severity on a ten point scale, with ten being the most severe symptoms.  McClatcher reported that she spent most of the day lying down; was unable to walk for more than 20 feet without resting; and was unable to bike, sew, work, cook, clean, or do laundry without assistance.  She also stated that she was unable to dress or care for herself without difficulty or only with assistance and that pain disrupted her sleep.  According to McClatcher she was unable to lift or hold items with her right hand.  She also reported problems with memory and daily side effects such as headaches, dizziness, and

constipation from her medications.

McClatcher underwent a mental status examination by psychologist Kenneth R. Felker, Ph.D. on September 4, 2002. Tr. at 335-38. McClatcher told Dr. Felker that she suffered from emphysema, bronchitis, and allergies, was unable to lift anything with her left hand without pain in her shoulder, and was unable to perform daily activities or personal hygiene without help. She acknowledged anxiety, diminished energy, loss of sexual interest, reduced interest in her surroundings, and some thoughts of suicide. Dr. Felker also observed signs of blunted affect, somewhat restricted attention span and ability to concentrate, some limitations in abstract thinking, and marginal to fair insight and judgment. He diagnosed McClatcher as suffering from a depressive disorder without secondary symptoms. Dr. Felker opined that McClatcher had a mild to moderate restriction in her ability to concentrate and attend to tasks, moderately impaired ability to understand and follow instructions and carry out routine tasks, moderately impaired ability to relate to others and deal with the public, and moderately to substantially impaired ability to relate to work peers and deal with supervisors. He assigned McClatcher a Global Assessment of Functioning ("GAF") of 52.[1]

On September 20, 2002 Catherine A. Flynn, Psy.D. reviewed McClatcher's file and evaluated McClatcher using the Psychiatric Review Technique and a Residual Mental Functional Capacity Assessment. Tr. at 339-57. Dr. Flynn found that McClatcher suffered from a depressive disorder accompanied by sleep disturbance, decreased energy, and thoughts of suicide without suicidal intent. She opined that McClatcher had mild

---

[1] A GAF of between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

7

restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence, and pace.  Dr. Flynn further opined that McClatcher was moderately limited in her ability to maintain attention and concentration for extended periods.  Dr. Flynn found no other restrictions or limitations on McClatcher's mental capacities.

On September 25, 2002 Jeffrey Vasiloff, M.D. reviewed McClatcher's file and evaluated her using a Physical Residual Functional Capacity Assessment.  Tr. at 358-65. Dr. Vasiloff opined that McClatcher could occasionally lift 20 pounds, frequently lift 10 pounds, could stand or walk with normal breaks a total of six hours in an eight-hour workday, could sit with normal breaks a total of six hours in an eight-hour workday, and was limited in the use of her upper right extremity.  He believed that McClatcher could not reach overhead with her right arm and was about two-thirds of normal in her ability to otherwise reach, handle objects, or engage in finger manipulation with her right upper extremity.  He found no other limitations.  He concluded by opining that McClatcher's symptoms were attributable to a medically determinable impairment and that the severity or duration of her symptoms were not disproportionate to the expected severity or duration of her symptoms given her impairment.

McClatcher was admitted to Lake Hospital December 15, 2003.  Sup. tr. at 517-25. X-rays of McClztcher's right shoulder showed calcification at the greater tuberosity possibly relating to calcific tendinitis.  There was no apparent fracture or dislocation.  A treating emergency room physician completed an Occupational Health Services Status Report on McClatcher opined that McClatcher could lift up to 20 pounds occasionally; could occasionally reach above her shoulder and reach below her knee; and could frequently but not continuously stand or walk, bend, climb, twist or turn, and squat or kneel.

8

On March 18, 2005 the ALJ held a hearing at which McClatcher testified. Immediately before McClatcher testified, the ALJ admitted into evidence exhibits 1F through 21F and A through F and a statement given by McClatcher's sister, who helps care for McClatcher.

McClatcher testified that she had limited movement in her right shoulder, arm, and hand, accompanied by pain, numbness, and tingling. She stated that although she had problems maintaining her grasp on objects, she could use her right arm to open doors, do a little cooking, and lift four or five pounds. According to McClatcher, she suffers from occasional back pain sufficiently severe to stop whatever she is doing and require her to bend over for relief. McClatcher also testified that perfumes, deodorants, and body smells triggered her asthma, and she experienced daily shortness of breath after walking about 50 feet, She said that in the average day then and during the relevant period she spent most of the day lying down or sitting; hardly ever prepared meals; sometimes drove as much as five or eight miles; and did not do laundry, make beds, cook, do yard work, garden, shovel snow, vaccum, or dust. She did some limited grocery shopping, but she did not engage in her previous pastimes of sewing, bicycling, and engaging in church-related activities. She further testified that during the relevant period the pain she experienced was a 10 on a 10-point scale, her asthmatic symptoms were of severity eight on a 10-point scale, and that she was very depressed. McClatcher also described the medications she was taking and her use of a TENS unit since 2001 and explained that she did not have to pay for her medications.

Three medical experts testified after reviewing McClatcher's record. The first testified that x-rays did not support her claims of shoulder and back pain as alleged and

9

that McClatcher was capable of light work limited to lifting 20 pounds occasionally as long as she did not lift the weight above her waist.  The second testified that McClatcher had problems with bronchitis two or three times a year and that there was no objective, current evidence to support her claim that her breathing difficulties prevented her from doing light work.  The second medical expert also testified that McClatcher had to work in a clean indoor environment with filtered air because of her allergies.  Upon cross examination, the second medical expert stated that because McClatcher was a non-smoker, current pulmonary tests would be of some value in determining her pulmonary function during her insured period.  The third medical expert testified that McClatcher suffered from a mild form of depression that did not severely restrict her cognitive functioning.

All three medical experts commented that there were periods in the record for which there was no documentation that McClatcher had sought medical treatment.  Her attorney asserted that the documentary record was incomplete and asked the ALJ to secure current pulmonary function tests and an orthopedic workup.  He also pointed out that his client was indigent and unable to secure the psychiatric treatment she needs.  The ALJ gave McClatcher three or four weeks to secure the missing records.

Toward the end of the hearing, the ALJ engaged in the following colloquy with the vocational expert and McClatcher's attorney:

> ALJ: . . . Now the other thing that I wanted to make, as you were questioning her, I went though her work period and I haven't asked [the vocational expert] about it, but I'm going to do it right now.  She does have work, prior work activity that's sedentary, right?
> [Vocational expert]: Yes, sir, she does.
> ALJ: Right, and so which means that now I'm one step more deep into it.  I don't have to find her disabled if she has the capacity for sedentary work.  If she has sedentary work capacity she can do some of her past work and she's not disabled. . . . So let's get that pulmonary function test.  And I don't think we need a--

10

I think that her arm condition is very clear. I know she's limited in her work. It's all over the record. But she might be limited to sedentary or light [work] and that would not preclude her from her past work. I would have to check now on the combination of that plus a deterioration of her pulmonary condition. Do you follow me?

ATTY: Well, Your Honor, I do understand and I'm wondering, Your Honor, based on the, what's in the file with regard to her description and what she's provided today in the way of supplementation to her original indication if, in fact, she was doing something more than just light work or sedentary work at the time of her injury in November '00.

ALJ: Well, I didn't go until, I didn't go only on that one that she described, I went through her whole history. She has here, cashier, stock, which was done at the light level. But then she has here answer the phone and log line sheets, less than ten pounds. And then she has typing, answering the phone, less than ten pounds. Typing and answering the phone less than ten -- this is three jobs in a row. And then she has type, schedule appointments, ten pounds. So, of her six jobs that she has in the record four of them are sedentary and the other two are light.

ATTY: In understand, Your Honor, all of which she can't do today.

ALJ: Well, I'll --

ATTY: That's why we're here.

ALJ: -- all of which she says she cannot do today. According to her doctors that I have here the record does not support her testimony and that's why --

ATTY: Well, I have to --

ALJ: -- that's why I'm asking for the pulmonary function test.

Tr. at 461-62.

Dr. Bhaiji examined McClatcher on about May 27, 2005. Tr. at 383-89. McClatcher reported shortness of breath after walking 30 feet; she also reported that she was smoking. McClatcher also reported pain, tingling, and muscle tightening in her upper right extremity and pain in her lower back. Dr. Bhaiji found significant inspiratory and expiratory wheezing in all lung fields; abnormal grasp, manipulation, and fine coordination in the right hand; pain in the dip joints of the right hand but no muscle atrophy; substantially depressed dynamometer readings for the upper right extremity; a somewhat reduced range of motion in the right shoulder and hand; and a reduced range of motion in the dorsolumbar spine. He found no other physical abnormalities. Dr. Bhaiji diagnosed McClatcher as suffering from post right shoulder injury with right hand injury, chronic obstructive pulmonary

11

disease, hypertension, and lumbar sprain/strain. He opined that McClatcher "would not have difficulty with work-related physical activities such as sitting or standing. May have difficulty walking, lifting, carrying and handling objects [and] . . . with traveling." Tr. at 385.

On July 29, 2005 Dr. Bhaiji conducted a pulmonary test on McClatcher and completed a Pulmonary Function Studies form at the request of the Bureau. Tr. at 390-401. Dr. Bhaiji concluded that McClatcher suffered from an obstructive disorder but found that the tests were otherwise invalid because of the patient's poor effort.

On August 29, 2005 Dr. Bhaiji completed a Medical Source Statement of Ability to Do Work-Related Activities form assessing McClatcher's physical capabilities. Tr. at 402-05. He found that McClatcher could occasionally lift 10 pounds, frequently lift 20 pounds,[2] could stand or walk at least two hours in an eight-hour work day, and was limited in the use of her upper right extremity. He also found that she could occasionally climb, balance, kneel, crouch, crawl, and stoop. Dr. Bhaiji also noted that McClatcher had occasional problems reaching, handling, and fingering on the right side and constantly had problems with feeling on that side. He noted no other physical limitations.

## III.

A claimant is entitled to receive DIB when she establishes disability within the meaning of the Act prior to the expiration of his insured status. 42 U.S.C. § 423(a) and (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 800 F.2d 860, 862 (6th Cir. 1988) (per curiam); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). A claimant is considered disabled for the purposes of DIB when she cannot perform

---

[2] The court assumes that Dr. Bhaiji inadvertently reversed these figures.

"substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505 and 416.905 (1992); see also *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

This court's review is limited to a determination of whether on the record as a whole the Commissioner's decision is supported by substantial evidence. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). "Substantial evidence" is more than a scintilla of evidence but less than a preponderance of evidence. It is evidence which a reasonable person would accept as adequate support for a proposition. *Richardson v. Perales*, 402 U.S. 389 (1971). If the decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

To determine whether a claimant is disabled, the Commissioner proceeds through a sequential, five-step evaluation. See 20 C.F.R. §§ 404.1520 and 416.920. In the instant case all parties agree that the McClatcher satisfies the first step, that is, she was not engaged in substantial gainful employment at the time she filed her disability claim. Similarly, all parties agree that McClatcher's problems with her right arm constitute a severe functional impairment and that these problems do not meet or equal an impairment set forth in the Listing. Disagreement occurs at step four of the evaluation: The parties disagree regarding the ALJ's assessment of McClatcher's residual functional capacity ("RFC") and with the ALJ's determination that McClatcher is capable of performing her past

13

relevant work.

A reviewing court must keep in mind that although the burden of going forward with the evidence shifts between the parties from time to time during the five-step evaluation, the burden of persuasion on the issue of ultimate disability always rests with the claimant. *Richardson v., Heckler*, 750 F.2d 506, 509 (6th Cir. 1984).

IV.

McClatcher asserts that the ALJ's decision is not supported by substantial evidence for five reasons: (1) the ALJ erred in relying on the non-examining medical expert's opinion over the opinion of an examining psychologist and a state agency psychologist; (2) the ALJ failed in his duty fully and fairly to develop the record; (3) the ALJ erred in not considering "other sources of information" when making his credibility determination; (4) the ALJ erred in denying McClatcher's claim at the fourth step of the sequential process without providing the notice required by due process; and (5) substantial evidence does not support the ALJ's findings regarding McClatcher's RFC. The Commissioner denies these assertions.

A.    *Whether the ALJ erred in relying on a non-examining medical expert's opinion over the opinion of an examining psychologist and a state agency psychologist in finding that McClatcher 's depression was not a severe impairment*

McClatcher argues that the ALJ's finding that McClatcher's depression was not a severe impairment is not supported by substantial evidence because the ALJ erroneously relied on the testimony of a non-examining medical expert rather than relying on the opinions of an examining psychologist and a state agency psychologist. The Commissioner responds that the ALJ properly used the testimony of the non-examining medical expert to make sense of the record.

Determinations of the credibility of witnesses, the weighing of evidence, and the

14

resolution of conflicting evidence are the province of the ALJ:

> The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded. The Secretary and not the court has the power to weigh all the evidence and resolve significant conflicts in the testimony. . . . "[T]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility."

*Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) (quoting *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)) (citations omitted). The ALJ's credibility determinations are entitled to great weight," *Cohen*, 964 F.2d at 529, and a reviewing court may not easily disregard them.

The regulations governing the Social Security Administration describe the factors which an ALJ should consider in weighing opinion evidence. *See* 20 C.F.R. § 404.1527(d). In relevant part, these regulations provide that an ALJ should consider the following factors in weighing a medical opinion: (1) generally give more weight to an examining source than a non-examining source; (2) generally give more weight to sources which present greater findings or explanations in support of an opinion; and (3) generally give greater weight to an opinion which is more consistent with the record as a whole.

After Dr. Felker examined and interviewed McClatcher, he reported observing signs of blunted affect, somewhat restricted attention span and ability to concentrate, some limitations in abstract thinking, and marginal to fair insight and judgment. He diagnosed McClatcher as suffering from a depressive disorder without secondary symptoms. Dr. Felker opined that McClatcher had a mild to moderate restriction in her ability to concentrate and attend to tasks, moderately impaired ability to understand and follow instructions and carry out routine tasks, moderately impaired ability to relate to others and deal with the public, and moderately to substantially impaired ability to relate to work peers

and deal with supervisors. He assigned McClatcher a GAF of 52, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning.

When Dr. Flynn, a state agency psychiatrist, reviewed McClatcher's file, she concluded that McClatcher suffered from a depressive disorder accompanied by sleep disturbance, decreased energy, and thoughts of suicide without suicidal intent. She opined that McClatcher had mild restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence, and pace. Dr. Flynn further opined that McClatcher was moderately limited in her ability to maintain attention and concentration for extended periods.

At the hearing, a medical expert testified that McClatcher suffered from a mild form of depression that did not severely restrict her cognitive functioning.

In rejecting the opinions of Drs. Felker and Flynn that McClatcher suffered moderate impairment of some cognitive functioning, the ALJ wrote as follows:

> The claimant . . . alleges depression. In order to evaluate the severity of that impairment, I have assessed her functional limitations. The claimant attended a mental status examination on September 4, 2002 and was seen by Kenneth R. Felker, Ph.D. (see Ex. 15F). The claimant reported being married with two adult children. Her extended family includes several siblings and she described their relationships as "so-so." She was rather vague about her work history. The claimant reported difficulties caring for ordinary daily activities and hygiene because of pain in her hand and shoulder. She also reported memory problems. On examination, the claimant's grooming and hygiene were described as good. She was cooperative and did not reveal any undue impulsivity, but admitted that there were times when she was easily frustrated and had difficulty with controlling feelings of anger. She also admitted that her level of motivation was very limited at that time. Her speech was normal and she was able to respond to all of the questions appropriately. Her affect appeared to be blunted and she indicated that she had been depressed. She said that her appetite was variable and that her sleep was restless and interrupted. She alleged crying spells several times a week and that she had some passing thoughts of suicide; however, she did not describe herself as suicidal. There was no evidence of paranoid or grandiose thinking and she denied experiencing auditory or visual hallucinations.

The claimant was oriented to person, place, and time.  Her attention span and ability to concentrate were somewhat restricted.  She was able to do serial seven subtractions correctly but did them at a very slow pace.  She could recall one of three objects after five minutes had elapsed.  The claimant gave the impression that she was basically capable of managing her affairs.  Her daily activities were not extensive, although she demonstrated an ability to care for her own personal needs and hygiene.  She also reported doing a few chores such as the dishes and making the bed.  Her hobbies included sewing and baking.  She denied extensive socialization except with her family.  Although she reported a preference to be alone, she admitted going to church occasionally.  She reported being able to do errands as long as they were close to home.  The claimant was diagnosed with a depressive disorder NOS and given a global assessment of functioning of 52, which indicates moderate symptoms. . . .

Despite her claims of memory and concentration problems, the claimant reported elsewhere in the record that she needed no reminders to take care of her personal needs or grooming, or to take her medications (Ex. 14F at 3).  She reported being able to drive short distances to stores to pick up such items as bread and mild [sic] (Ex. 14F at 4).  She alleged that due to a short attention span, she is unable to always remember things (Ex. 14F at 7).  However, despite these allegations, the claimant also noted that she is able to follow spoken and written instructions, pay bills, count change, handle a savings account, and use a checkbook with no reported problems (Ex. 14F at 5, 7).  Therefore, in considering the claimant's own admissions to her mental abilities, I disagree with both Dr. Felker's assessment and the opinion by the State Agency physician that the claimant is moderately impaired with regards to following instructions (Ex. 15F at 3).  This is consistent with Dr. Brooks' testimony, in which he stated that the claimant has had no psychiatric treatment nor displayed any cognitive limitations.

The evidence shows that the claimant has a mild restriction in her activities of daily living and mild difficulties in maintaining social functioning related to her mental impairment.  She has mild deficiencies of concentration, persistence, or pace; and she has no extended episodes of deterioration.  These findings are consistent with the State Agency medical consultant, with the exception of difficulties in maintaining concentration, persistence, or pace (Ex. 18F at 11).  Furthermore, her depressive symptoms have not resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment could be expected to cause her to decompensate; and she does not have a current history of an inability to function outside a highly supportive living arrangement.  In summary, the claimant's functional limitations from her mental impairments are so slight that I find that her mental impairments are not severe impairments when considered individually. . . . Nevertheless, I have considered those impairments in combination with her other impairments at the remaining steps of my analysis.

Tr. at 17-19.

17

The ALJ's discussion is problematic in a number of respects. First, to the extent that the ALJ bases his disagreement with the opinion of the examining psychiatrist on facts recited in the ALJ's opinion that are also detailed by Dr. Felker as the basis for *his* differing opinion, then the ALJ is practicing psychiatry when he is not trained to do so. Second, the ALJ's assertion that McClatcher had no memory problems because she remembered to take her medicine and take care of her personal needs or grooming is based on a selective and distorted recitation of what the record says. McClatcher said that she needed no reminders to take her medication *because the pain is a constant reminder* to do so. Tr. at 325. When McClatcher was asked whether she needed any help or reminders to take care of her personal needs and grooming, she checked "yes." Tr. at 325. To twist the record in this way is unworthy of a judicial officer. Third, the ALJ is again engaging in the practice of psychiatry when he opines that "her depressive symptoms have not resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment could be expected to cause her to decompensate," as there is no assertion from any expert to warrant this conclusion. Fourth, McClatcher has spent little time outside her home since the date of her alleged disability. She has, therefore, no current history of *any* kind of functioning, successful or otherwise, outside a highly supportive living arrangement. Fifth, the opinion testimony of Dr. Brooks, which the ALJ finds so congenial, was delivered *before* McClatcher testified regarding her daily activities and consisted of the following:

> Q. And . . . it is in the record that she suffers from depression?
> A. We have one record. There was a psychological evaluation done on September of '02 . . . so this is two and a half years ago . . . Exhibit 15F in which she was described as having some depression not otherwise specified which means less than a major depression. There's no history of any psychiatric

18

> treatment.  Her cognitive functions were not severely restricted by that so we have evidence of a mild form of depression.

Tr. at 431.  Dr. Brooks' testimony that McClatcher's cognitive functions "were not severely restricted" is entirely compatible with Dr. Felker's opinion that McClatcher has a mild to moderate restriction in her ability to concentrate and attend to tasks, moderate impairment in her ability to understand and follow instructions and carry out routine tasks, moderate impairment in her ability to relate to others and deal with the public, moderate to substantial impairment in her ability to relate to work peers and deal with supervisors, and a GAF of 52.  Indeed, as Dr. Brooks' opinion was apparently based only on Dr. Felker's report and not upon any other source,[3] Dr. Brooks had no basis, in any case, for disagreeing with Dr. Felker.  That the ALJ could claim to be relying on Dr. Brooks' testimony, therefore, in overturning the opinion of Dr. Felker is inconceivable.

The ALJ's opinion that McClatcher has only a mild restriction in her activities of daily living; mild difficulties in maintaining social functioning related to her mental impairment; and mild deficiencies of concentration, persistence, or pace is supported only by his misreading of the record and by his own practice of psychiatry.  It is not, therefore, supported by substantial evidence.  For this reason alone, the decision of the Commissioner must be overturned.

B.  *Whether the ALJ failed in his duty fully and fairly to develop the record and whether the ALJ failed to consider the affidavit of McClatcher's sister*

McClatcher argues that because the ALJ should have known that documents were

---

[3] The only testimony given by McClatcher prior to Brooks' giving his medical opinion was testimony regarding her physical impairments.  Also, Dr. Brooks was apparently not given Dr. Flynn's report based on her review of McClatcher's file.  Dr. Flynn's opinion is in substantial agreement with that of Dr. Felker.

missing from the record and failed to secure those documents, the ALJ's opinion cannot be said to be supported by substantial evidence. The Commissioner replies that it is within the ALJ's discretion to determine whether additional evidence is necessary and that McClatcher is precluded from raising issues on appeal that she did not raise before the agency.[4]

McClatcher presents exhibits attached to her brief on the merits as support for her argument that the record was not fully developed (Docket # 19). These exhibits include a number of medical records that the ALJ failed to secure, including records that present objective medical evidence of severe restrictions in McClatcher's ability to lift and carry with her right arm and hand. The Commissioner objects that these documents should not be admitted, as they are only admissible pursuant to sentence six of 42 U.S.C. § 405(g) and McClatcher does not satisfy the requirements of that subsection.

Both McClatcher's arguments and the Commissioner's are moot. For reasons

---

[4] The Commissioner's arguments are without merit. As McClatcher points out in her reply brief (Docket # 41), the ALJ has discretion in deciding whether to develop new evidence for the record, such as asking for additional tests or seeking new medical opinions. *See* 20 C.F.R. § 404.1527(f)(2)(i). But McClatcher is not arguing that the ALJ should have developed new evidence. Rather, she argues that the ALJ should have obtained *records that already existed and that he should have known existed*, pursuant to 20 C.F.R. § 404.1512(d) and (e). The Commissioner's argument, therefore, misses the point.

The Commissioner's argument that a claimant may not raise on appeal to the district court any argument not raised before the agency is utterly without legal merit. As McClatcher indicates, it is in direct derogation to the holding to the contrary in *Sims v. Apfel*, 530 U.S. 103 (2000). The Commissioner supports his assertion by citing *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001), for the proposition that "the fact that appellant obtained different counsel for the purposes of filing her appeal does not allow her to raise these arguments before this Court." As the court in *Schoenfeld* was referring to an appellant's failure to raise arguments in the *district* court before raising them in the *appellate* court, the quotation in *Schoenfeld* has absolutely no application to the instant case.

expressed elsewhere in this opinion, the case will be remanded to the Commissioner for reconsideration. At that time, the Commissioner will consider all the evidence which McClatcher believes should be part of the record.

C.    *Whether the ALJ erred in denying McClatcher's claim at the fourth step of the sequential process without providing the notice required by due process*

McClatcher argues that the ALJ erred by denying her claim at the fourth stage of the sequential process without providing notice that he was reconsidering the agency's previous determination that she could not perform her past relevant work. The Commissioner responds that the ALJ is permitted to reconsider a previously favorable determination if new evidence presented at the hearing justifies such reconsideration.

Once again, the Commissioner's argument misses the point. Whether the ALJ is permitted to reconsider a favorable determination is not the issue; the issue is whether the ALJ is required to provide *notice* of such reconsideration. The applicable regulations require notice of reconsideration of a previously favorably-decided issue:

> (a) *General.* The issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor. However, if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, he or she will notify you and will consider it an issue at the hearing.
> (b) *New Issues*--(1) *General.* The administrative law judge may consider a new issue at the hearing if he or she notifies you and all the parties about the new issue any time after receiving the hearing request and before mailing notice of the hearing decision. . . .
> (2) *Notice of a new issue.* The administrative law judge shall notify you and any other party if he or she will consider any new issue. Notice *of the* time and place of the hearing on any new issues will be given in a manner described in § 404.938, unless you have indicated in writing that you do not wish to receive the notice.

20 C.F.R. § 404.946 ("§ 404.946"). Regulation 20 C.F.R. § 404.938(a) requires notice in writing delivered by mail or in person and requires that the notice "contain a statement of

the specific issues to be decided . . . ."  Section 404.946 clearly contemplates, therefore, written notice of a reconsideration of a previously favorably-decided issue in writing and before a hearing is conducted over that issue.  The ALJ failed to issue the required notice before conducting a hearing on the issue in the instant case.

It is error for an ALJ to consider an issue absent notice to the parties pursuant to 20 C.F.R. § 404.946 of his intention to do so.  *Nazzaro v. Callahan*, 978 F. Supp. 452, 463 (W.D.N.Y. 1997).  In the social security context the failure of an ALJ to notify all parties prior to a hearing that he or she intends to consider an issue is a violation of procedural due process.  *See Francisco v. Barnhart*, 366 F. Supp. 2d 461, 466 (S.D. Tx. 2004) (citing cases), and *Harris v. Callahan*, 11 F. Supp. 2d 880, 884 (E.D. Tx. 1998) (citing cases). The cure for this violation is to remand the case to the ALJ to hold a hearing over the issue after giving the parties proper notification of the issue to be considered.  *See Francisco*, 366 F. Supp. 2d at 466, and *Harris*, 11 F. Supp. 2d at 884.  That is, therefore, what this court will do.

D.      *Whether substantial evidence supports the ALJ's findings regarding McClatcher's RFC*

McClatcher contends that the ALJ's determination that McClatcher was capable of light work with the sole limitation that she do no overhead work is not supported by substantial evidence.  The Commissioner responds that the ALJ properly relied on the testimony of a medical expert at the hearing in arriving at his opinion regarding McClatcher's RFC.

Dr. Bhaiji examined McClatcher in 2002 and 2005.  In 2002 he opined that McClatcher would have no difficulty with work-related physical activities except with lifting,

22

carrying, or handling objects, and possibly with traveling. In May 2005 he opined that McClatcher would not have difficulty with sitting or standing but might have difficulty walking, lifting, carrying, handling, and traveling. In August 2005 he completed a Medical Source Statement of Ability to Do Work-Related Activities in which he asserted that McClatcher could stand or walk at least two hours in an eight-hour work day and could occasionally climb, balance, kneel, crouch, crawl, and stoop. Dr. Bhaiji also noted that McClatcher was limited in the use of her upper right extremity and had occasional problems reaching, handling, fingering, and feeling on the right side. On September 25, 2002 Dr. Vasiloff examined McClatcher's record and concluded that McClatcher could not reach overhead with her right arm and was about two-thirds of normal in her ability to otherwise reach, handle objects, or engage in finger manipulation with her right upper extremity.

At the hearing, the ALJ did not ask the medical expert who addressed McClatcher's motor skills about anything other than her ability to lift objects.[5] The Commissioner errs, then, in asserting that the ALJ relied on the medical expert's testimony in dismissing Dr. Bhaiji's and Dr. Vasiloff's opinions that McClatcher had difficulty handling objects and Dr. Bhaiji's opinion that she might have difficulty walking; could only occasionally climb, balance, kneel, crouch, crawl, and stoop; and was limited in the use of her upper right extremity beyond limitations on her ability to lift and carry. The ALJ did not deal with Dr. Bhaiji's or Dr. Vasiloff's opinions regarding these limitations in his decision; he simply

---

[5] Moreover, the medical expert testified at the hearing that McClatcher should not lift 20 pounds above her waist, not above her head. That limitation appears nowhere in the ALJ's decision.

ignored them.[6]  As these limitations are inconsistent with an ability to do light work, the ALJ's opinion regarding McClatcher's RFC is not supported by substantial evidence.  For this reason, too, the case must be remanded to the ALJ.

V.

For the reasons given above the court reverses the decision of the Commissioner and remands the case to the ALJ for a new hearing after proper notification regarding the issues that he will consider in adjudicating McClatcher's application.  The ALJ is directed to consider all relevant evidence in reaching his decision and to justify any decision that prefers the opinions of non-examining medical experts over the opinions of examining medical experts.

**IT IS SO ORDERED.**


Dated:  February 19, 2008                    /s/Patricia A. Hemann
                                             Patricia A. Hemann
                                             United States Magistrate Judge

---

[6]  The ALJ refers in his opinion to Exh. 22F at 23 in support of his assertion that Dr. Bhaiji opined that McClatcher was capable of light work.  The cited reference contains no such opinion.